SO ORDERED: March 13, 2026.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GERARDO LORENZO LINARDUCCI, | ) | Case No. 25-03768-JMC-13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KENNETH D. MURENA, in his capacity as | ) | |
| court-appointed Receiver of Drive Planning, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 25-50110 |
| | ) | |
| GERARDO LORENZO LINARDUCCI, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON MOTION TO DISMISS

THIS MATTER comes before the Court on *Defendant's Motion to Dismiss Receiver's Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* filed by Gerardo Lorenzo Linarducci ("Debtor") on November 17, 2025 (Docket No. 9) (the "Motion"). The Motion seeks dismissal of the *Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* filed by Kenneth D. Murena, in his capacity as the court-appointed receiver of Drive Planning, LLC ("Receiver"), on October 16, 2025 (Docket No. 3) (the

"Complaint").

The Court, having reviewed the Complaint, the Motion, *Defendant's Brief in Support of Motion to Dismiss Receiver's Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* filed on November 17, 2025 (Docket No. 9-1), *Plaintiff's Response In Opposition to Defendant's Motion to Dismiss Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* filed by Receiver on December 8, 2025 (Docket No. 10) ("Receiver's Initial Brief"), *Defendant's Reply in Support of Motion to Dismiss Receiver's Amended Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. § 523* filed on December 22, 2025 (Docket No. 11) and *Receiver's Supplemental Brief in Support of Stay Relief Motion (Doc. 77) Regarding Legal Bases for Claims, Standing of Receiver, and Effect of Bankruptcy on the Receiver's Constructive Trust Remedy* filed on February 11, 2026 in the underlying bankruptcy case (Bankruptcy Case Docket No. 95), and the Court having heard counsel regarding this matter at hearings held in the underlying bankruptcy case on January 29, 2026 and February 18, 2026, and being otherwise duly advised, now **DENIES** the Motion.

*Background Facts*

The following "background facts" are taken from the numbered paragraphs of Receiver's Complaint. These "facts" are taken as true solely for purposes of resolution of the Motion (*see* pp. 6-7 *infra*):

> 1. [Receiver was] appointed pursuant to the Order Appointing Receiver [(the "Receivership Order")] entered by the United States District Court for the Northern District of Georgia in *SEC v. Drive Planning, LLC, et al.,* Case No. 1:24-cv-03583-VMC (the "SEC Action"). …
> 2. [Debtor] is an individual who, upon information and belief, resides at 12162 Pearl Bay Ridge, Indianapolis, Indiana.
> 3. Debtor commenced this Chapter 13 case by filing a petition on June 27, 2025 (the "Petition Date").
> …
> 8. This action arises out of the massive Ponzi scheme orchestrated by Drive Planning, LLC ("Drive Planning") and its principals. From 2020 through

    2024, Drive Planning misled more than 2,400 investors [(the "Investors")] into investing approximately $380 million into a fraudulent real estate and tax lien investment scheme having many of the attributes of a classic Ponzi scheme.  The Ponzi scheme is the subject of the pending SEC Action, which was filed on August 13, 2024.

    9. [Debtor] was one of Drive Planning's most prolific agents and promoters.  He received more than $5.9 million in commissions for soliciting investors into the scheme, making him the second-highest paid Drive Planning agent.  [Debtor] lured investors (often unsophisticated individuals persuaded to borrow against retirement accounts or home equity) to place their savings into Drive Planning's fraudulent investment products.

    10. In addition to his substantial commissions, on July 10, 2023, Drive Planning diverted $1,920,535.75 of investor funds to enable [Debtor] to purchase a residence located at 12162 Pearl Bay Ridge, Indianapolis, Indiana 46236 (the "Pearl Bay Property").  Although title to the Pearl Bay Property is in the name of [Debtor] and his wife, the property is held in constructive trust for the benefit of Drive Planning's defrauded investors and the Receivership Estate.

    11. In the SEC Action, the United States District Court for the Northern District of Georgia has authorized the Receiver to pursue claims against [Debtor].

    12. The Receiver has filed two proofs of claim against the Debtor: Claim No. 25 for the ill-gotten commissions in the amount of $5,949,611.41, and Claim No. 26 for the diverted funds in the amount of $1,920,535.75 used to acquire the Pearl Bay Property (collectively, the "[Claims]").

*The Receiver and Standing to Assert the Claims*

    Receiver is a federal equity receiver appointed by the Receivership Court pursuant to 28 U.S.C. §§ 754, 959 and 1692 and Fed. R. Civ. P. 66.  The Receivership Court appointed Receiver by its Receivership Order dated August 13, 2024.

    Generally, a federal equity receivership is established by a federal court under its equitable powers, often in the context of an enforcement action by a federal agency, such as the SEC, FTC or CTC.  From his appointment in August 2024, Receiver assumed comprehensive control over the assets of Drive Planning.  *See* Financial Poise Faculty, *Federal Equity Receiverships:  Key Concepts and Strategies,* THE NATIONAL LAW REVIEW, Apr. 13, 2025, at 1-2, https://natlawreview.com/node/297337/printable/print.

Pursuant to the Receivership Order, Receiver took some level of ownership interest in and the right to possess, control and dispose of all proceeds[1] of the fraudulent Ponzi scheme funds that were received and disbursed by Drive Planning, as such proceeds were, in effect, the "fruit of the poisonous" Ponzi scheme tree.  *See* the Receivership Order, pp. 1-2, defining "Recoverable Assets".  The Receiver is cloaked with various other rights, powers and property interests by the Receivership Order including the authorization to "… institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate … ; the Receiver may seek … disgorgement of profits, … avoidance of fraudulent transfers, … collection of debts …".  (Receivership Order, ¶ 43, pp. 18-19.)

Receiver, in effect, stands in the shoes of one of the alleged defrauders, Drive Planning, not the Investors who were the victims of the Ponzi scheme.  Said another way, Receiver "does not have standing to sue on behalf of … creditors [of Drive Planning, such as Investors]".  *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (hereinafter, "*Scholes*").  Receiver asserts as the basis for his Claims "fraudulent transfer."  (*See* ¶ 8 of each of the Claims.)  So how does Receiver have standing to make recovery from third parties, such as Debtor, of funds or other proceeds arguably transferred and acquired through the fraudulent Ponzi scheme?

The Court considers two judicial decisions to be authoritative in resolving the standing of Receiver to make the fraudulent transfer claims that are the bases of Receiver's Claims.  Those decisions are *Scholes* and *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014) (hereinafter, "*Wiand*").[2]

---

[1]   At least such "proceeds" in the actual or constructive possession and/or control of the "Relief Defendants".
[2]   In *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303 (11th Cir. 2024), the 11th Circuit again considered whether a federal equity receiver appointed following a Ponzi scheme has "standing" to assert fraudulent transfer claims, as well as common tort law claims.  The 11th Circuit affirmed its position in *Wiand* that the " 'receiver of entities used to perpetuate a Ponzi scheme … h[as] standing to sue on behalf of the [entities] that were injured by the Ponzi scheme operator.' "  *Id.* at 1309 (quoting *Wiand*, 753 F.3d at 1202).

Many states, including Indiana and Georgia, have adopted as that state's fraudulent or avoidable transfer statute a version of one of the model uniform statutes regarding "fraudulent" and/or "voidable" transfers, such as IND. CODE §§ 32-18-2-1 through -23 (Indiana's version of the UVTA) and GA. CODE ANN. §§ 18-2-70 through -85 (Georgia's version of the UVTA). Fraudulent transfer statutes generally set forth elements by which a "creditor" of a "debtor" may avoid a transfer to a third-party transferee, as being either "actually" or "constructively" fraudulent as to the creditor.  To understand whether Receiver has standing to assert the Claims, it is therefore necessary to define and understand a triangular or three-party relationship that is necessary for relief under such fraudulent transfer statutes.

*Wiand* defines the necessary triangular relationship that must be constructed for a federal equity receiver to assert a fraudulent transfer claim against a third-party transferee, such as Debtor.  In such a triangle, as explained in *Wiand*, (1) the "receivership entity" (here, Drive Planning) is the "creditor"; (2) the principal perpetrator of the fraud and controlling party with respect to the receivership entity, here presumably Russell Todd Burkhalter ("Burkhalter"), is the "debtor"; and (3) Debtor is the transferee. *Wiand* and *Scholes* describe the nature of the claim held by the receivership entity against the perpetrator/controlling party, determine how a "Ponzi scheme presumption" establishes actual intent, and explain how Receiver may satisfy the other elements of the applicable fraudulent transfer statute.

<u>Positions of the Parties</u>

By the Complaint, Receiver asks the Court to determine that the Debts arising from the Claims are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6) and (a)(19).

By the Motion, Debtor argues that Counts IV (§ 523(a)(2)(6)) and V (§ 523(a)(19)) of the Complaint should be dismissed because they are premature and/or the Court lacks subject matter

jurisdiction over them.  Receiver acquiesces to the dismissal of Counts IV and V, without prejudice.  (Receiver's Initial Brief, p. 2.)

Debtor argues that Counts I (§ 523(a)(2)(A)), II (§ 523(a)(2)(B)) and III (§ 523(a)(4)) of the Complaint should also be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b) and 7009, respectively, because Receiver failed to plead fraud with sufficient particularity to satisfy the heightened pleading requirements for fraud.

*Standard of Review*

Courts review and resolve Rule 12(b)(6) motions as follows:

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit.  *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990).  In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009).  Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570); *see also Tamayo,* 526 F.3d at 1082.  The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal,* 556 U.S. at 678–79; *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).  Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. at 679.

*Trustees of Teamsters Union Local No. 142 Pension Trust Fund v. Cathie's Cartage, Inc.*, 2013 WL 2402990 at *3 (N.D. Ind. 2013).

*Reasoning*

**Objection to Dischargeability of Debt – § 523**

Exceptions to discharge under § 523 "are to be construed strictly against a creditor and liberally in favor of the debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The burden is on the objecting creditor to prove exceptions to discharge." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (citation omitted). The burden of proof required is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Section 523 provides, in relevant part:

> (a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
> …
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>> (B) use of a statement in writing –
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive;
>
> …
> (4)     for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> …
> (6)     for willful and malicious injury by the debtor to another entity or to the property of another entity … .

### § 523(a)(2)(A)

Receiver alleges that the Debts are nondischargeable pursuant to § 523(a)(2)(A) because the Debts arose from fraudulent transfers to Debtor.

The Seventh Circuit Court of Appeals distinguishes material differences among the three possible grounds for nondischargeability under § 523(a)(2)(A) and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud." *See Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 699-700 (Bankr. N.D. Ill. 2002) (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)).

To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theory, a creditor must prove all of the following elements: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010) (citations omitted).

"What constitutes 'false pretenses' in the context of § 523(a)(2)(A) has been defined as 'implied misrepresentations or conduct intended to create and foster a false impression.' " *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr. N.D. Ill. 1995) (quotations omitted)). "False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* at 928 (citation omitted).

A "false representation" can be shown by the debtor's written statement, spoken statement or conduct. *Deady v. Hanson (In re Hanson),* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010) (citing *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001)). "A

debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Id.* (citing *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). "An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact." *Scarpello*, 272 B.R. at 700 (citing *Jairath*, 259 B.R. at 314).

Justifiable reliance is an intermediate level of reliance which is less stringent than "reasonable reliance" but more stringent than "reliance in fact." *See Field v. Mans*, 516 U.S. 59, 72-73, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995). Justifiable reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id.* at 71, 116 S.Ct. at 444 (quotations omitted). Justifiable reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id.* (quotation omitted).

"Scienter, or intent to deceive, is … a required element under § 523(a)(2)(A) whether the claim is for a false representation, false pretenses, or actual fraud." *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 495 (Bankr. N.D. Ill. 2016) (citation omitted).

A debtor's intent to deceive for purposes of the false pretenses and false representation prongs on § 523(a)(2)(A) "is measured by a debtor's subjective intention at the time the representation was made." *Scarpello*, 272 B.R. at 700 (citing *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998)). "Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances." *Hanson*, 432 B.R. at 773 (internal citations omitted).

The core assertion of Debtor's Motion is that Receiver has failed to sufficiently plead the circumstances of one or more misrepresentations or omissions of material fact by Debtor that form the bases of Receiver's fraud claims against Debtor.  However, a creditor, such as Receiver, may plead and prove that a debtor is guilty of "actual fraud" that will cause a resulting debt to be excepted from discharge without specifying any misrepresentation by the debtor.

"[A]ctual fraud is broader than misrepresentation," *McClellan*, 217 F.3d at 893, in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Scarpello*, 272 B.R. at 700 (citing *McClellan*, 217 F.3d at 894).  "Actual fraud" is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (quotations omitted).  *See also Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 359-60, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016) ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud … that can be effected without a false representation. … The word 'actual' has a simple meaning in the context of common-law fraud:  It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.' … [A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.' ") (internal citation omitted).  In such cases, a creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Hanson*, 432 B.R. at 772 (citing *McClellan*, 217 F.3d at 894).

"[T]he focus of an 'actual fraud' claim is on the defendant's state of mind at the time of his purportedly fraudulent conduct." *Merritt v. Wiszniewski (In re Wiszniewski)*, 2010 WL 3488960 at *5 (Bankr. N.D. Ill. 2010) (citation omitted).

"The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent

conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359, 136 S.Ct. 1581, 1586 (2016).

An exception to discharge under § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. De La Cruz*, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219, 140 L.Ed.2d 341 (1998).

In this case, Receiver alleges that Debtor was the recipient of fraudulent transfers for which Receiver may recover under applicable fraudulent transfer law. Receiver alleges that the transfers were products of actual (not constructive) fraud with the requisite fraudulent intent shown by the fact that the transfers were part and parcel of the Ponzi scheme. *See Wiand*, 753 F.3d at 1200-01 (citing many cases).

### § 523(a)(2)(B)

As discussed earlier, Receiver's claim of fraud is not of the misrepresentation variety but is instead of the fraudulent scheme variety endorsed by the Supreme Court in *Husky*.

However, it is more difficult to fit such a scheme into § 523(a)(2)(B). "In order to prevail on a claim under ... § 523(a)(2)(B), a creditor must prove by a preponderance of the evidence that a debtor made, with an intent to deceive, a materially false written statement regarding his financial condition and that the creditor relied on that statement." *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995).

"Material falsity has been defined as 'an important or substantial untruth.' " *In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985) (citations omitted). "A recurring guidepost used by courts has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition." *Id.* (citations omitted). This guidepost is sometimes referred to as the "*causa sine qua non*" or "but for" test. *Selfreliance Fed. Credit Union. v. Harasymiw*

*(In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990).  Courts have also described a materially false statement as "one that paints a substantially inaccurate picture of a debtor's financial condition by misrepresenting information of the type which normally would affect the decision to grant credit."  *Midwest Cmty. Fed. Credit Union v. Sharp (In re Sharp)*, 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007) (citations omitted).

"[A] statement about a single asset can be a 'statement respecting the debtor's financial condition' under § 523(a)(2) of the Bankruptcy Code."  *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 725, 138 S.Ct. 1752, 1764, 201 L.Ed.2d 102 (2018).  "[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status."  *Id.* at 720, 138 S.Ct. at 1761.

"The reasonableness of a creditor's reliance should be determined on a case by case basis."  *Webster Bank, Nat'l Ass'n v. Contos (In re Contos)*, 417 B.R. 557, 566 (Bankr. N.D. Ill. 2009) (citing *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989)).

> The Seventh Circuit has recognized that, in considering the reasonableness of a creditor's reliance, the court should not undertake a subjective evaluation and judgment of a creditor's lending policy and practices, nor use the requirement to second-guess a creditor's lending decisions.  So while the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors, a lender may not ignore evidence of deceit and expect the court to later grant an exception to the debtor's discharge.

*Peoples Tr. and Sav. Bank v. Hanselman (In re Hanselman)*, 454 B.R. 460, 465 (Bankr. S.D. Ind. 2011) (internal quotations and citations omitted).  "Two factors to consider when determining whether a creditor's reliance was reasonable are (1) whether the creditor's standard practices in evaluating credit-worthiness were followed and (2) whether there existed a 'red flag' that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate."  *Id.* at 464-65 (citing *Contos*, 417 B.R. at 566).

"The law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so ... ." *N. Tr. Co. v. Garman (In re Garman)*, 643 F.2d 1252, 1260 (7th Cir. 1980) (quotation omitted). Courts have noted that "actual intent is only rarely ascertainable by direct evidence as a debtor is unlikely to ever admit acting in a fraudulent manner. Consequently, like with other matters where the debtor's state of mind is placed at issue, the use of circumstantial evidence is usually necessary to determine whether the debtor acted with the requisite intent to deceive." *Sharp*, 357 B.R. at 767 (citation omitted). For that reason, "[w]hile a creditor can prove intent to deceive through direct evidence, … it may also be inferred where 'a person knowingly or recklessly makes a false representation which the person knows or should know will induce another to make a loan.' " *Hanselman*, 454 B.R. at 465-66 (quoting *Sheridan*, 57 F.3d at 633). "A debtor's intent to deceive may also be demonstrated by showing reckless indifference to, or reckless disregard for, the accuracy of the information in a financial statement." *Contos*, 417 B.R. at 565 (citation omitted). In addition, a debtor's mere "unsupported assertions of honest intent will not overcome the natural inferences from admitted facts." *Howard,* 73 B.R. at 700 (citing 3 COLLIER ON BANKRUPTCY, ¶ 523.09, at 523–62 (L. King, 15th ed.)).

In his Motion, Debtor does not attack Count II of the Complaint on the basis that the "writings" that are the subject of that Count ("solicitation materials" used to defraud investors) do not on their face appear to be financial statements respecting Debtor's financial condition. However, the statements that are the subject of Count II may be regarding an "insider" of Debtor, such as Drive Planning.

### § 523(a)(4)

Receiver alleges that the Debts are nondischargeable pursuant to § 523(a)(4) because Debtor owed fiduciary duties to investors and to Drive Planning.

To prove a § 523(a)(4) claim, a creditor must establish that " (1) 'the debtor acted as a fiduciary to the creditor at the time the debt was created,' and (2) 'the debt was caused by fraud or defalcation.' " *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016) (quoting *In re Berman*, 629 F.3d 761, 765-66 (7th Cir. 2011)).

"The court has defined a fiduciary relationship under § 523(a)(4) as 'a difference in knowledge or power between fiduciary and principal which … gives the former a position of ascendancy over the latter.' … A fiduciary relation only qualifies under § 523(a)(4) if it 'imposes real duties in advance of the breach.' " *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (citations omitted).

In this circuit, a fiduciary relationship for purposes of § 523(a)(4) "arises in just two situations: (1) when there is an express trust, and (2) when there is an implied fiduciary relationship." *Berman,* 629 F.3d at 768-70. To prove an implied fiduciary relationship,[3] "the creditor must show the relationship was one of 'special confidence' … [that] exists when the parties have an unequal relationship, one where there is 'a difference in knowledge or power between fiduciary and principal' that gives 'the former a position of ascendancy over the latter.'" *CR Adventures LLC v. Hughes (In re Hughes)*, 609 B.R. 789, 797 (Bankr. N.D. Ill. 2019) (quoting *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994)).

Under § 523(a)(4), fraud means " 'positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.' " *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013)

---

[3] Receiver's Initial Brief did not argue the presence of an express trust.

(quoting *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878)).  Section 523(a)(4) covers "only debts for fraud while acting as a fiduciary".  *Husky,* 578 U.S. at 363, 136 S.Ct. at 1588.

Similarly, defalcation requires a creditor to prove "a culpable state of mind ... involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269, 133 S.Ct. at 1757.  The state-of-mind requirement must involve "at least a subjective, criminal level of recklessness … [where] the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Jahrling*, 816 F.3d at 925 (quoting *Bullock*, 133 S.Ct. at 1759).  Defalcation, as opposed to fraud, "may be used to refer to nonfraudulent breaches of fiduciary duty." *Id.*

> Embezzlement is:
>
> the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538-39 (7th Cir. 1989), *abrogated on other grounds by Grogan v. Garner*, 489 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  In order to prove embezzlement, a creditor must show that the debtor (1) appropriated property for her own benefit; and (2) that she did so with fraudulent intent or deceit. *Id.*  Thus, it is not sufficient that the debtor act without authority, but she must also have fraudulent intent.

*Wallner v. Liebl (In re Liebl)*, 434 B.R. 529, 537 (Bankr. N.D. Ill. 2010).

"For embezzlement, fraudulent intent 'is knowledge that the use is devoid of authorization, *scienter* for short.' " *FNA Group, Inc. v. Demetrios Arvanitis (In re Arvanitis)*, 523 B.R. 633, 639 (Bankr. N.D Ill. 2015) (quoting *Sherman v. Potapov (In re Sherman)*, 603 F.3d 11, 13 (1st Cir. 2010)).  *See also Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 332 (Bankr. N.D. Ind. 2006) (" 'Embezzlement, for purposes of … § 523 … "requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." ' " (quotation omitted)).

"Embezzlement differs from larceny only in that the original taking was lawful." *Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 802 (Bankr. N.D. Ill. 1995).

"Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner." *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991) (citations omitted). "The original taking must be unlawful and the debtor must have felonious intent at the time of the taking." *Chiromo v. Grigoletti (In re Grigoletti)*, 2010 WL 5055927, at *2 (Bankr. S.D. Ind. 2010) (citation omitted). It is "clear that [larceny] appl[ies] outside of the fiduciary context." *Bullock*, 569 U.S. at 275, 133 S.Ct. at 1760.

Once again, Debtor's attack on Count III is limited to the alleged failure to plead fraudulent misrepresentation with the required particularity. Debtor did not by the Motion challenge any of the other aspects of Receiver's § 523(a)(4) claim.

*Decision*

Because the Motion attacks only the alleged failure to plead misrepresentation with sufficient particularity and Receiver's claims are based on fraudulent transfers and not misrepresentations *per se*, the Motion fails.

Based on Receiver's acquiescence as set forth in Receiver's Initial Brief, Counts IV and V and hereby DISMISSED without prejudice.

Otherwise, the Motion is DENIED.

IT IS SO ORDERED.

# # #